No. 22-2808

# UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

**Roby Anderson,**

**Appellant,**

**v.**

**KAR Global, d/b/a ADESA Missouri, LLC,**

**Appellee.**

# ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

## APPELLANT'S BRIEF

---

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Kevin A. Todd*
John J. Ziegelmeyer III, MO 59042
jziegelmeyer@hkm.com
Brad K. Thoenen, MO 59778
bthoenen@hkm.com
Kevin A. Todd, MO 73048
ktodd@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.3332

ATTORNEYS FOR APPELLANT

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant Roby Anderson was an employee of Defendant-Appellee KAR Global, d/b/a ADESA Missouri, LLC for nearly two years. On November 16, 2019, Anderson suffered a seizure that limited his ability to work without an accommodation. In the period immediately following his seizure, at the urging of Anderson's local supervisors, Lindsey Comer and Kevin Rhoads, Appellee accommodated Anderson's disability. In the ensuing weeks, after a company Vice President learned of his disability, Appellee told Anderson that his requested accommodation would not work going forward, ignored Anderson's proposed alternative accommodation options, disengaged from the interactive process, and abruptly terminated Anderson's employment on December 18, 2019.

On December 14, 2020, Appellant filed his Complaint against Defendant-Appellee in the United States District Court for the Western District of Missouri, seeking relief for both disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended ("ADAAA"). After a period of discovery, Defendant filed a Motion for Summary Judgment on both claims, which the District Court granted. Plaintiff-Appellant appeals the District Court's Order granting Defendant's Motion for Summary Judgment. Due to the existence of many factual disputes and legal issues presented in the case, Plaintiff-Appellant requests this Court grant oral argument of 15 minutes for each party.

Appellate Case: 22-2808    Page: 2    Date Filed: 10/20/2022 Entry ID: 5209663

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT………………………………………………………………… ii

TABLE OF CONTENTS…………………………………………….. iii

TABLE OF AUTHORITIES………………………………………..... v

JURISDICTIONAL STATEMENT………………………………….. vii

STATEMENT OF ISSUES, WITH APPOSITE CASES……………..... vii

STATEMENT OF THE CASE……………………………………..... 1

    I.    Appellant's Role at ADESA………………………………..... 1

    II.    Appellant's Disability and Request for Accommodation……….. 2

    III.    Appellant's Termination…………………………………….. 4

    IV.    Procedural History……………………………………….... 5

SUMMARY OF THE ARGUMENT………………………………….. 6

ARGUMENT……………………………………………………….. 8

    I.    The District Court Erred in Granting Summary Judgment to Appellee on Anderson's Claim of ADA Retaliation……………. 8

        A.    Standard of Review…………………………………….. 8

        B.    A rational trier of fact could find that Appellee terminated Anderson in retaliation for protected activity under the ADA. 9

            1.    Anderson engaged in protected activity and suffered an adverse employment action……………………………… 9

            2.    The evidence, viewed in the light most favorable to Anderson, demonstrates a causal connection between his protected activity and his termination…………………….. 10

            3.    The evidence regarding Appellee's offered non-retaliatory rationale is unclear, and best resolved by the factfinder at trial………………………………………...................... 15

    II.    The District Court Erred in Granting Summary Judgment to Appellee on Anderson's Claim of Disability Discrimination…… 18

Appellate Case: 22-2808    Page: 3    Date Filed: 10/20/2022    Entry ID: 5209663

A.    Standard of Review…………………………………………...    19

B.    A rational trier of fact could find that Appellee's termination    19
of Anderson's employment was discriminatory under the
ADA……………………………………………………...

    1.    The District Court properly found that Appellant was    20
disabled pursuant to the ADA……………………………

    2.    The evidence, viewed in the light most favorable to    22
Anderson, demonstrates a causal connection between his
disability and his termination…………………………...

    3.    The evidence regarding Appellee's offered non-    24
discriminatory rationale is unclear, and best resolved by
the factfinder at trial………………………………………

CONCLUSION………………………………………………...    25

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND    26
TYPEFACE REQUIREMENTS…………………………………...

CERTIFICATE OF VIRUS FREE…………………………………    26

CERTIFICATE OF SERVICE……………………………………    26

Appellate Case: 22-2808    Page: 4    Date Filed: 10/20/2022 Entry ID: 5209663

# TABLE OF AUTHORITIES

## CASES

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)……………………… 16, 17

*Canning v. Creighton Univ.*, 995 F.3d 603 (8th Cir. 2021)…………... 19, 20

*EEOC v. Product Fabricators, Inc.*, 763 F.3d 963 (8th Cir. 2014)…... 16

*Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004)………… 18, 24

*Hawkins v. Ark. Dept. of Human Servs.*, No. 4:14CV00546, 2017 WL 10621235 (E.D. Ark. Apr. 3, 2017)…………………………………... 21

*Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003)… 10

*Hill v. Walker*, 737 F.3d 1209 (8th Cir. 2013)………………………... 9

*Kellogg v. Energy Safety Servs., Inc.*, 544 F.3d 1121 (10th Cir. 2008).. 21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………………………………………………………………… 9, 19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)…………... 15, 24

*Richardson v. Omaha Sch. Dist.*, 957 F.3d 869 (8th Cir. 2020)……… 8, 19

*St. Martin v. City of St. Paul*, 680 F.3d 1027 (8th Cir. 2012)………... 21

*Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022)……... 21

*Stallings v. Hussman Corp.*, 47 F.3d 1041, 1052 (8th Cir. 2006)……. 17, 18

*Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002)………………... 20

## Statutes, Rules, and Regulation

28 U.S.C. § 1291…………………………………………………………... v

28 U.S.C. § 1331…………………………………………………………… v

42 U.S.C. § 12203………………………………………………………… 9

42 U.S.C. § 12102………………………………………………………… 20

Appellate Case: 22-2808    Page: 5    Date Filed: 10/20/2022 Entry ID: 5209663

42 U.S.C. § 12112…………………………………………………………… 19

29 C.F.R. § 1630.2………………………………………………………… 21

29 C.F.R. Part 1630 app…………………………………………………… 22

Fed. R. Civ. P. 56………………………………………………………….. 8

Appellate Case: 22-2808     Page: 6     Date Filed: 10/20/2022 Entry ID: 5209663

# JURISDICTIONAL STATEMENT

This appeal is taken from an Order granting Summary Judgment, (App. 00488; R. Doc. 53), entered on August 3, 2022, and a Final Judgment, (App. 00503; R. Doc. 54), entered on August 9, 2022, by the Honorable Howard F. Sachs, United States District Judge, Western District of Missouri. The District Court had subject matter jurisdiction over this case under 28 U.S.C. § 1331. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. This appeal is from a final, appealable Order of the District Court, and Notice of this Appeal was timely filed on August 25, 2022. (App. 00007; R. Doc. 57).

# STATEMENT OF ISSUES, WITH APPOSITE CASES

Whether the District Court's grant of summary judgment to Appellee on Appellant's claims of disability discrimination and retaliation was error, due to the District Court's failure to consider evidence that the termination occurred after, and because of, Appellant's disability and request for accommodation in the light most favorable to Appellant as the non-moving party.

- *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020).

- *Canning v. Creighton Univ.*, 995 F.3d 603, 614 (8th Cir. 2021)

- *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004).

Appellate Case: 22-2808    Page: 7    Date Filed: 10/20/2022 Entry ID: 5209663

**STATEMENT OF THE CASE**

**I.      Appellant's Role at ADESA**

Appellant Roby Anderson has worked in the automotive industry for his entire career, initially in retail sales before transitioning to selling goods and services to car dealerships. In February 2018, Anderson was hired as an Outside Sales Representative, essentially a traveling salesman, by Appellee KAR Global, d/b/a ADESA Missouri, LLC ("ADESA"). (App. 00404; R. Doc. 52, at 37). ADESA recruited Anderson primarily for his skill as a "hunter," Defendant's term for sales representatives whose primary responsibility is to travel to dealerships and recruit new business. (App. 00298, 337; R. Doc. 49, at 18, R. Doc. 49-3, at 4). In that role, Anderson was expected to travel 3.5 days per week. (App. 00404; R. Doc. 52, at 37).

Anderson excelled in his position. He took over a sales territory that ADESA had not gotten any business from, and he was able to turn the territory around, developing a reputation as a "high performer." (App. 00337, 346; R. Doc. 49-3, at 4, R. Doc. 49-5, at 2).

In the fall of 2019, ADESA was in the process of planning for a merger with TradeRev, another KAR Global brand. Prior to Anderson's seizure, he heard that there was "potentially a reorganization . . . in the works." (App. 00330; R. Doc. 49-1, at 12). ADESA had not made a formal announcement of the merger at that time, and no post-merger staffing decisions had been made. (App. 00352; R. Doc. 49-6, at

1

6). Anderson understood the merger to be more about a shift in emphasis than a reduction in sales staff, as the company had talked about converting four ADESA and two TradeRev sales representatives (pre-merger) into four "hunter" and three "farmer" roles post-merger. (App. 00330-31; R. Doc. 49-1, at 12-13). Indeed, Anderson and his supervisors were operating under the assumption that his job was safe post-merger. Prior to his November 2019 seizure, Anderson's direct supervisor, Lindsey Comer, told him that she thought he would like his new post-merger position, which would be more of a pure "hunter" role than his job at the time. *Id*. Anderson's General Manager, Kevin Rhoads, told him that he envisioned Anderson in a hunter role going forward. Rob Peterson, the Assistant General Manager, spoke with Anderson about the possibility of an *expanded* hunter role. *Id*.

## II.     Appellant's Disability and Request for Accommodation

Following Anderson's seizure and resultant need for an accommodation, ADESA's tune changed. On Saturday, November 16, 2019, Anderson experienced a seizure while at his daughter's soccer game. (App. 00287; R. Doc. 49, at 7). He was promptly taken to the hospital, but he was released and able to return to work on Monday, November 18. (App. 00294; R. Doc. 49, at 14). As a result of the seizure, Anderson was restricted from driving for six months. (App. 00298; R. Doc. 49, at 18). He immediately reported the seizure, driving restriction, and his resulting need for an accommodation to his supervisors. (App. 00287; R. Doc. 49, at 7).

2

Comer and another local supervisor, Kevin Rhoads, "pushed hard" for ADESA to accommodate Anderson because he was a high performer. (App. 00346; R. Doc. 49-5, at 2). At Rhoads and Comer's urging, ADESA initially accommodated Anderson by having another employee, Jim Miller, drive Anderson to appointments two days/week. (App. 00411; R. Doc. 52, at 44). This was fewer days than Anderson's ordinary 3.5 day/week travel schedule, but still enabled him to keep up with his work. After a couple weeks however, Comer informed Anderson that the accommodation of having Miller drive him to appointments would not work going forward. (App. 00412; R. Doc. 52, at 45). Anderson proposed an alternate accommodation of having his father-in-law drive him to appointments. ADESA did not respond to that proposal and did not engage further with Anderson on the subject of accommodations prior to his termination. *Id.*

On November 26, shortly after he asked for an accommodation, Anderson told Comer he was worried about keeping his job in light of his new restrictions. Comer told Anderson that she "sure hope[d]" his inability to drive would not cause an issue for his job, but that she would need to disclose the issue to her boss and to Human Resources. (App. 00352-53; R. Doc. 49-6, at 6; R. Doc. 49-7, at 1). On or around November 26th, Comer informed both an HR representative and her supervisor, Kathy Hopkins, about Anderson's seizure and his need for an accommodation. *Id.*

3

### III.   Appellant's Termination

As of November 26, 2019, the Tuesday before Thanksgiving, when Comer told Hopkins about the seizure, ADESA had not made the decision to terminate Anderson's employment. (App. 00352; R. Doc. 49-6, at 6). By the following Friday, December 6, Hopkins was considering terminating Anderson's employment. Hopkins testified that her decision to terminate Anderson was based on sales performance and "organizational fit" for the new roles. (App. 00160; R. Doc. 31-9, at 7). As she considered the termination however, Hopkins had no criticisms of Anderson's performance, and she had not met him. The *only* things she knew about Anderson were that he had a seizure in November and that he needed an accommodation. (App. 00159; R. Doc. 31-9, at 6). When she asked one of Anderson's managers, Kevin Rhoads, for thoughts on Anderson, Rhoads told her that "in a pure hunter role . . . I think he'd be pretty darn good." (App. 00165; R. Doc. 31-9, at 12). Notably, Rhoads' comments around this time matched the conversations he and others were having with Anderson, in which they planned for him to have more of a "pure hunter role" post-merger.

As Hopkins considered her decision on December 6th, she emailed Human Resources for advice on the situation. In her email to HR, Hopkins mentioned only two facts about Anderson and the situation—that he had a medical restriction, and that she was considering termination. HR advised Hopkins that her plan "could be

4

an issue," at which point she raised alleged performance concerns for the first time. (App. 00345-46; R. Doc. 49-5, at 1-2). ADESA now contends that Anderson's termination was the result of downsizing caused by the ADESA/TradeRev merger. In her December 6th conversation with HR however, Hopkins never mentioned the merger, a reduction-in-force, or downsizing. Instead, after a brief back-and-forth, HR representative Marty Nowlin advised Hopkins that Anderson's termination was "defendable" based in part on the unreasonable nature of his accommodation. *Id*. On December 17, 2019, ADESA terminated Anderson's employment. Anderson was told that the termination was "a Kathy Hopkins situation." (App. 00077; R. Doc. 31-2, at 22).

## IV.  Procedural History

On March 26, 2020, Anderson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and retaliation. (App. 00233; R. Doc. 31-14, at 2). On October 27, 2020, the EEOC issued Anderson a Notice of Right to Sue. (App. 00361; R. Doc. 49-11). Anderson filed his Complaint in the United States District Court for the Western District of Missouri on December 14, 2020, and that Court granted Defendant's Motion for Summary Judgment on August 3, 2022. (App. 00002-06; Docket). This appeal followed.

Appellate Case: 22-2808    Page: 12    Date Filed: 10/20/2022 Entry ID: 5209663

## SUMMARY OF THE ARGUMENT

Based on the facts set forth above, and reasonable inferences drawn therefrom, a reasonable jury could find for Anderson on his claims for disability discrimination and retaliation under the ADAAA. Specifically, a jury could find, on Anderson's retaliation claim, (1) that he engaged in protected activity when he requested an accommodation for his disability and when he proposed an alternate accommodation after being told the initial accommodation was no longer workable; (2) that he suffered an adverse employment action when he was terminated on December 17, 2019; and (3) that there is a causal connection between Anderson's protected activity and the adverse employment action, based on both the temporal proximity between the two actions and reasonable inferences drawn from Hopkins' and Nowlin's discussion of whether the termination was "defendable" based on the view that Anderson's accommodation request was unreasonable.

Similarly on Anderson's disability discrimination claim, a reasonable jury could find (1) that he was disabled based on a substantial limitation in his ability to work without an accommodation following his seizure; (2) that he was qualified to perform the essential functions of his job, because he had been performing them at a high level; and (3) that he was terminated under circumstances giving rise to an inference of discrimination, based both on the close temporal connection between his seizure and his termination, and on the explicit connection between the

6

termination decision and Anderson's medical restriction made by decisionmaker Kathy Hopkins.

In granting summary judgment for Appellee, the District Court made three key, interconnected errors. The District Court erred first in assuming, contrary to Comer's testimony, that the termination decision was made when merger plans began prior to Anderson's seizure, and second, in finding that the December 6, 2019 emails between Hopkins and Nowlin were post-termination, even though Anderson was not terminated until December 17, 2019. Third, and consequently, the District Court failed to draw appropriate inferences from those pre-termination emails in favor of Appellant. When those errors are corrected and the appropriate inferences are drawn in favor of Anderson, it becomes clear that a reasonable jury could find in his favor on both counts. As such, Appellant respectfully requests that the District Court's Order granting summary judgment to Appellee be reversed in full.

Appellate Case: 22-2808   Page: 14   Date Filed: 10/20/2022 Entry ID: 5209663

# ARGUMENT

## I. The District Court Erred in Granting Summary Judgment to Appellee on Anderson's Claim of ADA Retaliation.

The District Court erred in granting summary judgment for ADESA on Anderson's claim of retaliation under the ADA. In finding that the decision to terminate Anderson's employment occurred prior to his November 16, 2019 seizure, the District Court failed to consider evidence that the decision was not made until after November 26th in the light most favorable to the non-moving party. As a result of that error, the District Court did not draw the proper inferences in favor of Anderson from a set of post-seizure, pre-termination emails discussing ADESA's decision to terminate Anderson's employment. When the summary judgment standard of review is properly applied, it is clear that genuine issues of material fact preclude summary judgment on this claim.

### A. Standard of Review

This Court reviews a grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 876 (8th Cir. 2020). Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). If the record taken as a whole *could* lead a rational

8

trier of fact to find for the non-moving party, summary judgment must be denied. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

> **B.     A rational trier of fact could find that Appellee terminated Anderson in retaliation for protected activity under the ADA.**

The anti-retaliation provisions of the Americans with Disabilities Act ("ADA") make it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a claim for retaliation under the ADA, Appellant must show that "(1) []he engaged in statutorily protected activity, (2) the employer took an adverse action against [him], and (3) there was a causal connection between the adverse action and the protected activity." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). Based on the evidence at this stage, taken in the light most favorable to Anderson, a reasonable jury could find that he has met each of those elements.

> **1.     Anderson engaged in protected activity and suffered an adverse employment action.**

As to the first two elements, it is clear that Anderson engaged in protected activity when he requested an accommodation on November 18, 2019, and again a couple weeks later when he proposed an alternative accommodation after ADESA told him that the first accommodation would not work going forward. Furthermore,

9

it is undisputed that ADESA terminated Anderson's employment on December 17, 2019. This Court has held that "[r]equesting an accommodation is protected activity, and termination is certainly an adverse employment action." *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003) (internal citation removed). Appellee did not challenge either of these two elements at the District Court, and Appellant does not challenge here that Court's finding that he has met his burden on these points.

### 2. The evidence, viewed in the light most favorable to Anderson, demonstrates a causal connection between his protected activity and his termination.

Because Appellant has met the first two elements of his claim for retaliation, he must next present evidence that, when interpreted in the light most favorable to him, gives rise to an inference that his termination was in retaliation for his protected activity. The District Court erroneously found that no such inference could be drawn from a set of December 6th emails in which decisionmaker Kathy Hopkins and a Human Resources representative explicitly linked Anderson's termination, his disability, and his requested accommodation. Instead, the Court found, contrary to evidence in the record, that those emails occurred post-termination. (App. 00498; R. Doc. 53, at 11). When the facts and all reasonable inferences are properly drawn in Appellant's favor, it becomes clear that a reasonable jury could find that the termination resulted from his protected activity.

10

Throughout the fall of 2019, ADESA was considering a merger with its sister company, TradeRev. While the merger was in the works prior to Anderson's seizure, the decision to terminate his employment had not been made. (App. 00406; R. Doc. 52, at 39). Indeed, he had multiple conversations with supervisors during that period in which they discussed Anderson's post-merger role, how much they expected him to like the new position, and their belief that the new role would be well-tailored to Anderson's skillset. (App. 00330-31; R. Doc. 49-1, at 12-13).

On November 16, 2019, Appellant suffered a seizure, after which he was unable to drive for six months. Anderson informed his employer about the seizure and requested an accommodation two days later, on November 18th. (App. 00287; R. Doc. 49, at 7). Anderson's local management team, Lindsey Comer and Kevin Rhoads, pushed hard to accommodate Anderson because they viewed him as a high performer. (App. 00346; R. Doc. 49-5, at 2). Eight days later, on November 26th, Comer told Anderson that she would have to tell her boss, Kathy Hopkins, about Anderson's seizure and need for an accommodation. Comer also told Anderson that she hoped his need for an accommodation would not affect his job, but she wasn't sure. (App. 00352-53; R. Doc. 49-6, at 6; R. Doc. 49-7, at 1).

On November 26th, when Comer told Hopkins about Anderson's need for an accommodation, ADESA had not decided to terminate Anderson's employment, and Anderson's local managers seemed excited about how well he would fit in his post-

11

merger position. Hopkins had never met Anderson, and she had no criticisms of his performance. (App. 00159; R. Doc. 31-9, at 6). Within a few days however, she was preparing to terminate Anderson's employment, supposedly based on sales performance and "organizational fit" for post-merger roles. (App. 00160, 167; R. Doc. 31-9, at 7, 14). While the managers who knew him believed Anderson would be a "pretty darn good" hunter post-merger, Hopkins only knew him as someone with a medical restriction.

Kathy Hopkins, Appellee's Vice President of Sales, was the primary decisionmaker in Anderson's termination. (App. 00077; R. Doc. 31-2, at 22). Her December 6th email exchange with Marty Nowlin, a Human Resources representative, reflects that Anderson's medical restriction and request for an accommodation played a key role in ADESA's decision to terminate his employment. Those emails show that ten days after she learned of Anderson's request for an accommodation, Hopkins was contemplating terminating his employment. They further indicate that Anderson's disability and request for an accommodation were inextricably linked to ADESA's termination. In her first email, Hopkins tells Nowlin she has "identified" Anderson for termination, along with the one fact she knew about him at the time—that he had a medical restriction. Only after Nowlin told Hopkins that her plan "could be an issue" did she bring up performance as an alternative reason for the decision. The thread concludes with

12

Nowlin advising her that the termination would be "defendable" in part based on ADESA's view that accommodating Anderson would be unreasonable. (App. 00345-46; R. Doc. 49-5, at 1-2). Eleven days later, ADESA terminated Anderson's employment at Hopkins' direction. (App. 00077; R. Doc. 31-2, at 22).

From those facts, a reasonable jury could determine that Appellee's decision to terminate Anderson was not based on poor performance or poor "organizational fit," but in retaliation for requesting what ADESA leadership viewed as an unreasonable accommodation. In holding otherwise, the District Court erred by not viewing the facts in the light most favorable to Anderson as the non-moving party, and not drawing all reasonable inferences from the December 6th emails in Appellant's favor.

The District Court's first two errors, assuming that the termination decision was made prior to Anderson's seizure and concluding that the December 6th emails between Hopkins and Nowlin were post-termination, are intertwined. Both errors represent a failure to view the facts in the light most favorable to the non-moving party. The District Court outlined in detail the fact that Anderson had "heard about" the proposed ADESA/TradeRev merger prior to his seizure, and that Comer, his direct supervisor, "learned of" a plan to reorganize in September or October 2019. (App. 00499; R. Doc. 53, at 12). Additionally, the District Court incorrectly referred to the December 6th emails between Hopkins and Nowlin as "post-termination

emails." (App. 00498; R. Doc. 53, at 11). Contrary to the District Court's finding however, a general plan for a merger is distinct from a specific decision to terminate any particular employees. Notably, Comer testified that the decision to terminate Anderson's employment had not been made prior to November 26th, the day she told Kathy Hopkins about the seizure and need for an accommodation. (App. 00352; R. Doc. 49-6, at 6). The December 6th emails show that Hopkins was still considering her decision at that time, and Anderson was not terminated until December 17th. As such, the evidence taken in the light most favorable to Anderson clearly shows that the termination decision was not made prior to his seizure and request for an accommodation. Instead, it was made within days after Hopkins learned of the requested accommodation and, with the help of Human Resources, determined that Anderson's request was unreasonable.

The District Court's third error flows from those first two errors. Because the District Court considered the December 6th emails to be "post-termination emails," the Court did not draw all reasonable inferences from those emails in favor of Appellant, as it must on summary judgment. When properly viewed as pre-termination, it becomes clear that those emails represent a key part of Hopkins' decisional process. Hopkins asked Human Resources for input ten days after learning of Anderson's request for accommodation. At the time, she knew that Anderson had a disability and had asked for an accommodation, but she had no

14

criticisms of his performance, had not met him, and had been told by Anderson's local manager that he was a "pretty darn good" hunter—the specific post-merger role he was being considered for. The email chain starts by explicitly linking Anderson's termination with his "medical restriction." Only after Nowlin tells Hopkins that it "could be an issue" to terminate Appellant because of his medical restriction did she say anything about his performance. The thread concludes by circling back to Anderson's disability and request for accommodation, highlighting ADESA's view that the termination was "defendable" based on the company's opinion that Anderson's accommodation request was unreasonable. A reasonable jury could easily infer, both from the timeline and the pre-termination, December 6th emails, that ADESA intended to keep Anderson on post-merger, and that those plans changed because Hopkins and other ADESA leadership viewed his request for accommodation as unreasonable.

Based on the above, Appellant asks the Court to find that Anderson has put forth facts sufficient to show a *prima facie* case of retaliation.

### 3. The evidence regarding Appellee's offered non-retaliatory rationale is unclear, and best resolved by the factfinder at trial

Once Anderson satisfies his burden to show a *prima facie* case, the matter proceeds under the familiar *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ADESA next bears the burden to put forward a legitimate, nondiscriminatory reason for its decision, after which

15

Anderson must present evidence to create a genuine issue of material fact as to whether Appellee's proffered reason for the termination is pretextual. *EEOC v. Product Fabricators, Inc.*, 763 F.3d 963, 969-74 (8th Cir. 2014). While the District Court did not reach this part of the analysis because it erroneously determined that Anderson failed to state a *prima facie* case, Anderson has also presented sufficient evidence that Appellee's stated reason for its decision is pretextual, or at minimum is not the only but-for cause of the termination.

Here, Appellee's proffered reason for the termination is a reduction-in-force ("RIF") accompanying the ADESA/TradeRev merger, through which employees were evaluated by sales performance and "organizational fit." While Appellant does not dispute that the merger occurred, or that some employees were terminated as a result, the record shows a clear factual dispute as to whether Anderson's disability and request for an accommodation were a cause of his termination.

Notably, the Supreme Court has recently made clear that but-for causation "can be a sweeping standard," as events "often . . . have multiple but-for causes." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). While *Bostock* addressed causation in the context of Title VII, the Americans with Disabilities Act contains the same "because" causation language the Supreme Court addressed there. *See* 42 U.S.C. § 12203(a); *Bostock*, 140 S. Ct. at 1739. Therefore, ADESA "cannot avoid liability just by citing some *other* factor that contributed to its challenged

16

employment decision." *Id.* Rather, to be entitled to summary judgment, ADESA must show that a reasonable jury *could not* determine that its decision had anything to do with Anderson's disability or request for accommodation. Appellee has failed to meet this standard.

As addressed in detail above, the ADESA/TradeRev merger was in the works for several weeks prior to Anderson's seizure. Yet before that seizure, and before his request for an accommodation, the record contains no indication that Anderson was marked for termination. Instead, it contains evidence of multiple optimistic conversations between Anderson and his supervisors about his post-merger role. Only after the onset of Anderson's disability, his request for an accommodation, and Kathy Hopkins' awareness of the situation, did that begin to change. Within ten days after Hopkins learned of Anderson's request for an accommodation, she was considering a termination. One driver of her decision, as evidenced by her email exchange with ADESA's Human Resources Department, was Anderson's "medical restriction" and his request for what the company viewed as an "unreasonable" accommodation. Notably, ADESA has since abandoned that rationale for the termination. Appellee no longer contends that Anderson's proposed accommodation was unreasonable, but now simply says that he was terminated during the RIF due to sales performance and poor "organizational fit." (App. 00160; R. Doc. 31-9, at 7). "An employee may prove pretext by demonstrating that . . . the employer changed

its explanation for why it fired the employee." *Stallings v. Hussman Corp.*, 47 F.3d 1041, 1052 (8th Cir. 2006).

It may be that absent the merger, the RIF, and ADESA's need to terminate *someone*, Anderson would not have been let go. Contrary to the District Court's holding however, the presence of these "causes unconnected" to Anderson's disability and protected activity do not entitle ADESA to summary judgment. (App. 00501; R. Doc. 53, at 14). A reasonable jury could still find that, absent his disability and request for an accommodation, ADESA would not have terminated *Anderson*. "At the summary judgment stage, the issue is whether the plaintiff has presented sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives *will not entitle the defendant to summary judgment*." *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004) (emphasis added).

As set forth above, Anderson has met his burden. Appellant asks the Court to reverse the District Court's grant of summary judgment as to his claim for ADA retaliation.

## II. The District Court Erred in Granting Summary Judgment to Appellee on Anderson's Claim of Disability Discrimination.

The District Court also erred in granting summary judgment for ADESA on Anderson's claim of disability discrimination under the ADA. As with his claim for retaliation, the District Court failed to consider the evidence that Appellee's decision

18

to terminate Anderson's employment was not made until Kathy Hopkins was aware of his disability. As a result, the District Court erred in not drawing all reasonable inferences in favor of Anderson from the key December 6th emails. When those errors are corrected, it is clear that genuine issues of material fact preclude summary judgment on this claim.

### A. Standard of Review

As with Appellant's claim for retaliation, this Court reviews a grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 876 (8th Cir. 2020). If the record taken as a whole *could* lead a rational trier of fact to find for the non-moving party, summary judgment must be denied. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. A rational trier of fact could find that Appellee's termination of Anderson's employment was discriminatory under the ADA.

Under the ADA, employers such as ADESA shall not "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To prevail on his claim for disability discrimination, Appellant must show that "(1) []he was disabled or regarded as disabled under the ADA, (2) []he was qualified to perform the essential functions of the job, and (3) []he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Canning v. Creighton Univ.*,

19

995 F.3d 603, 614 (8th Cir. 2021) (quotation marks removed). Based on the evidence in the record, taken in the light most favorable to Anderson at this stage of the case, a reasonable jury could find that he has met each of those elements.

### 1. The District Court Properly Found that Appellant was disabled pursuant to the ADA

As the District Court properly found, Appellant was disabled pursuant to the ADA at the time of his termination. Anderson suffered a seizure on November 16, 2019. (App. 00287; R. Doc. 49, at 7). His doctors were unable to diagnose the underlying cause of the seizure, but they issued him a six-month driving restriction. (App. 00298; R. Doc. 49, at 18). That restriction substantially limited Anderson's ability to work.

A person is disabled under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). For purposes of this section, "major life activities include, but are not limited to . . . working." 42 U.S.C. § 12102(2)(A). The definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A). Additionally, "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). As set forth by the District Court, the ADA Amendments Act ("ADAAA") liberalized the definition of disability and explicitly rejected the strict standard previously outlined by the

20

Supreme Court in *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002). (App. 00492-93; R. Doc. 53, at 5-6; *see also Hawkins v. Ark. Dept. of Human Servs.*, No. 4:14CV00546, 2017 WL 10621235, at *5 (E.D. Ark. Apr. 3, 2017)). Under the amended statute, "[t]he effects of an impairment lasting or expected to last fewer than six months *can* be substantially limiting." *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1224 (9th Cir. 2022) (quoting 29 C.F.R. § 1630.2(j)(1)(ix)).

Even under the more stringent, pre-Amendments standard, other Circuit Courts held that an inability to drive could substantially limit one's ability to work a broad class of jobs. *E.g.*, *Kellogg v. Energy Safety Servs., Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008) (holding that "to show a substantial limitation in the major life activity of working, the plaintiff must . . . establish a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Undoubtedly, an inability to drive will sometimes enable the plaintiff to meet this standard." (internal quotation marks and citations removed)). Here, Appellant was unable to drive for six months following his November 2019 seizure. As the District Court found, this impairment substantially limited his ability to perform "a broad class of jobs." (*see* App. 00492-96; R. Doc. 53, at 5-9; *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032-33 (8th Cir. 2012)).

21

At ADESA, Anderson worked as an outside sales representative, a job that required him to be on the road for approximately 3.5 days per week. (App. 00404; R. Doc. 52, at 37). ADESA considered driving to be an essential function of Anderson's role. Throughout Anderson's career, he cultivated a skillset of being particularly good at going out on the road, recruiting new business, and making sales across the automotive industry. (App. 00298, 337; R. Doc. 49, at 18, R. Doc. 49-3, at 4). As the District Court held, Appellant's inability to drive substantially limited his ability to work in the broad class of jobs that he was particularly trained in, and thus he was disabled under the ADA. (App. 00494-95; R. Doc. 53, at 7-8; *see also* 29 C.F.R. Part 1630 app. ("A class of jobs may be determined by reference to the nature of the work that an individual is limited in performing.")).

### 2. The evidence, viewed in the light most favorable to Anderson, demonstrates a causal connection between his disability and his termination.

Because ADESA made no argument at the District Court that Appellant was unqualified to perform the essential elements of his job, and because it is undisputed that Appellant was performing his duties satisfactorily through the date of his termination, (App. 00415; R. Doc. 52, at 48), Appellant moves to the third element of a disability discrimination claim—whether he can show a causal connection between his disability and his termination. As with Anderson's retaliation claim, the District Court erred in determining, contrary to the evidence in the record, that the

22

December 6th emails between decisionmaker Kathy Hopkins and HR representative Marty Nowlin were post-termination messages. As a result of that error, the District Court failed to draw reasonable inferences from those emails in favor of Appellant. When the facts and reasonable inferences are properly drawn in Anderson's favor, it is clear that a reasonable jury could find a causal connection between his disability and ADESA's decision to terminate his employment.

As set forth in detail above, Appellee was engaged in general discussions of a merger between ADESA and TradeRev prior to Anderson's seizure. At that time however, the company had not decided to terminate Anderson's employment, and his supervisors had multiple discussions with him about his expected post-merger role. Only after the onset of Appellant's disability did ADESA's tune change. On November 26, 2019, decisionmaker Kathy Hopkins learned of Anderson's seizure, and within ten days, she had "identified" him for termination due to what she described as Anderson's "medical restriction." *See supra* Section I.B.2.

Because the District Court erroneously considered the December 6th emails to be post-termination, and appears to have assumed that the decision to terminate Anderson's employment was made prior to the onset of his disability, it failed to draw the proper inferences from those emails. A reasonable jury could easily determine that Hopkins made the decision to terminate Appellant because of his medical restriction, and only retroactively claimed a performance-based concern

Appellate Case: 22-2808    Page: 30    Date Filed: 10/20/2022 Entry ID: 5209663

after HR advised her that terminating an employee due to their disability "could be a concern." Therefore, Appellant asks this Court to reverse the District Court's errors and find that Anderson has stated a *prima facie* case of disability discrimination.

### 3. The evidence regarding Appellee's offered non-discriminatory rationale is unclear, and best resolved by the factfinder at trial

As with Anderson's retaliation claim, his discrimination claim proceeds under the *McDonnell Douglas* framework once he has put forth a *prima facie* case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ADESA has put forward a RIF accompanying its merger with TradeRev, through which employees were evaluated by sales and "organizational fit" as a non-discriminatory reason justifying its decision to terminate Anderson. However, while the District Court did not reach this stage of the analysis, a clear factual dispute exists as to whether the termination would have occurred in the absence of Anderson's disability.

The standard applied at this stage of Appellant's discrimination claim is the same as that for his retaliation claim. Under that standard, "the issue is whether the plaintiff has presented sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives *will not entitle the defendant to summary judgment*." *Griffith*, 387 F.3d at 735 (emphasis added). Here, while the ADESA/TradeRev merger may have been a factor in Appellee's decision to terminate Anderson's employment, the evidence at this stage suggests that Anderson's disability was, at

24

minimum, *also* a motivating factor. Because the evidence, taken in the light most favorable to Appellant, suggests that his disability was a motivating factor in his termination, the District Court's grant of summary judgment was improper and should be overturned.

## CONCLUSION

For the foregoing reasons, the District Court's grant of summary judgment on Anderson's claims for disability discrimination and retaliation under the Americans with Disabilities Act should be reversed, and this matter should be remanded to the United States District Court for the Western District of Missouri for further proceedings.

Respectfully Submitted:

**HKM EMPLOYMENT ATTORNEYS LLP**

By:    */s/ Kevin A. Todd*
John J. Ziegelmeyer III, MO 59042
jziegelmeyer@hkm.com
Brad K. Thoenen, MO 59778
bthoenen@hkm.com
Kevin A. Todd, MO 73048
ktodd@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.3332

ATTORNEYS FOR PLAINTIFF

25

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND TYPEFACE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 5,992 words, excluding the parts of the brief excepted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Mac in Times New Roman font style in size 14.

## CERTIFICATE OF VIRUS FREE

Pursuant to Rule 28A(h)(2) of the Eighth Circuit Rules of Appellate Procedure, the undersigned counsel for Appellant certifies that the attached Appellant's Brief has been scanned for computer viruses and is virus free.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2022, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

*/s/ Kevin A. Todd*
Attorney for Plaintiff

Appellate Case: 22-2808   Page: 33   Date Filed: 10/20/2022 Entry ID: 5209663