**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

**ROBY ANDERSON,**

Appellant,

v.

**KAR GLOBAL d/b/a ADESA MISSOURI, LLC,**

Appellee.

Appeal from the United States District Court
For the Western District of Missouri
Case No. 4:20-cv-00976-HFS
Howard F. Sachs, United States District Judge

# BRIEF OF APPELLEE

Jeffrey D. Hanslick, #46693
Dylan M. Long, #68217
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
jhanslick@littler.com
dlong@littler.com

**ATTORNEYS FOR APPELLEE**

## SUMMARY OF THE CASE

Plaintiff-Appellant Roby Anderson ("Plaintiff") has asserted two counts against Defendant-Appellee KAR Global d/b/a ADESA Missouri, LLC ("ADESA") under the Americans with Disabilities Act ("ADA"): (1) retaliatory discharge for informing ADESA of a medical issue and seeking accommodation and (2) discriminatory discharge because of an alleged disability.

In a well-reasoned and supported Order, the United States District Court for the Western District of Missouri ("District Court") granted summary judgment to ADESA, correctly applying this Court's precedent to conclude there was no evidence Plaintiff's claimed disability or protected activity had anything to do with the decision to terminate his employment. As explained below, Plaintiff's employment was terminated in connection with a company-wide Reduction in Force ("RIF") that eliminated around 50 sales-related positions. Plaintiff was included in the RIF based on a legitimate and lawful assessment of business needs, his skills, and his work performance.

ADESA does not believe oral argument is necessary to resolve this appeal. If the Court believes oral argument is needed, then ADESA needs no more than 15 minutes.

Appellate Case: 22-2808    Page: 2    Date Filed: 12/12/2022 Entry ID: 5226137

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 8th Cir. R. 26.1A, Defendant-Appellee ADESA Missouri, LLC states that it is wholly-owned by ADESA US Auction LLC, which is wholly-owned by Carvana Operations HC LLC, which is owned by Carvana Co. Sub LLC and Carvana Group, LLC. Carvana Co. Sub LLC's sole owner is Carvana Co., a publicly traded company. Defendant-Appellee ADESA Missouri, LLC has no other parent corporation or publicly held corporation that directly or indirectly owns 10% or more of its stock.

Appellate Case: 22-2808    Page: 3    Date Filed: 12/12/2022 Entry ID: 5226137

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE CASE ................................................................. i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF AUTHORITIES ............................................................. v

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF ISSUES ............................................................... 2

STATEMENT OF THE CASE ........................................................... 3

    I.     PROCEDURAL HISTORY ...............................................3

    II.    STATEMENT OF FACTS ...............................................3

         A.    Plaintiff's Job Duties and Responsibilities. ..............................4

         B.    Plaintiff's Seizure and ADESA's Accommodation of Plaintiff's Temporary Driving Restriction. .................................4

         C.    Merger of ADESA and TradeRev Sales Forces, RIF Evaluation and Analysis, and Termination of Plaintiff's Employment. ........................................................6

SUMMARY OF THE ARGUMENT ................................................. 11

ARGUMENT ................................................................................. 12

    I.     STANDARD OF REVIEW ............................................12

    II.    THE DISTRICT COURT CORRECTLY FOUND ADESA WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS UNDER THE ADA. ..........................12

         A.    The District Court correctly found that the undisputed facts do not give rise to any inference of discrimination or retaliation or that Plaintiff's alleged disability or protected activity were causally connected to his termination. ......................................................13

         B.    Plaintiff cannot establish that ADESA's legitimate non-retaliatory/non-discriminatory reasons for terminating Plaintiff's employment are merely pretext for illegal retaliation and discrimination. ................................16

         C.    Plaintiff's arguments to the contrary are not based in fact, law, or reality. ......................................................21

Appellate Case: 22-2808    Page: 4    Date Filed: 12/12/2022    Entry ID: 5226137

III.    CONCLUSION .................................................................................26

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND
    TYPEFACE REQUIREMENTS ...................................................27

STATEMENT REGARDING VIRUS SCANNING ..............................................27

CERTIFICATE OF SERVICE ...........................................................................27

iv.

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ahmed v. Am. Red Cross*,
218 F.3d 932 (8th Cir. 2000) ...............................................................20

*Anda v. Wickes Furniture Co.*,
517 F.3d 526 (8th Cir. 2008) ...............................................................18

*Avina v. Union Pacific RR Co.*,
No. 4:19-00480-CV-RK, 2021 WL 2903245 (W.D. Mo. July 9,
2021) ..................................................................................................16

*Bass v. SBC Commc'ns, Inc.*,
418 F.3d 870 (8th Cir. 2005) ...............................................................18

*Beasley v. Warren Unilube, Inc.*,
933 F.3d 932 (8th Cir. 2019) ...............................................................25

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020)........................................................................15

*Brenneman v. Famous Dave's of Am., Inc.*,
507 F.3d 1139 (8th Cir. 2007) .............................................................12

*Buehrle v. City of O'Fallon*,
695 F.3d 807 (8th Cir. 2012) ...............................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................12

*Chapman v. AI Transp.*,
229 F.3d 1012 (11th Cir. 2000) ...........................................................19

*Cornwell v. Electra Cent. Credit Union*,
439 F.3d 1018 (9th Cir. 2006) .............................................................19

*Davidson v. Tyco/Healthcare*,
416 F. Supp. 2d 690 (E.D. Mo. May 25, 2005)....................................20

v

*Dhyne v. Meiners Thriftway, Inc.*,
184 F.3d 983 (8th Cir. 1999) ...............................................................19

*E.E.O.C. v. Product Fabricators, Inc.*,
763 F.3d 963 (8th Cir. 2004) ...............................................................15

*Gibson v. Am. Greetings Corp.*,
670 F.3d 844 (8th Cir. 2012) ...............................................................12

*Gilmore-Lee v. Vilsack et al.*,
No. 4:20-cv-00408-DGK, 2022 WL 16838902 (W.D. Mo. Nov. 9,
2022) ...............................................................................................17

*Grey v. City of Oak Grove*,
396 F.3d 1031 (8th Cir. 2005) .............................................................18

*Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*,
687 F.3d 1045 (8th Cir. 2012) .............................................................18

*Henderson v. Ford Motor Co.*,
403 F.3d 1026 (8th Cir. 2005) .............................................................17

*Lake v. Yellow Transp. Inc.*,
596 F.3d 871 (8th Cir. 2010) ...............................................................17

*Oehmke v. Medtronic, Inc.*,
844 F.3d 748 (8th Cir. 2016) ...............................................................15

*Ottman v. City of Indep., Mo.*,
341 F.3d 751 (8th Cir. 2003) ...............................................................16

*Pelcha v. MW Bancorp, Inc.*,
988 F.3d 318 (6th Cir. 2021) ...............................................................15

*Reach v. AlliedSignal, Inc.*,
184 F. Supp. 2d 932 (W.D. Mo. 2000), *aff'd*, 13 F. App'x 445 (8th
Cir. 2001) ........................................................................................14

*Torgerson v. City of Rochester*,
643 F.3d 1031 (8th Cir. 2011) .............................................................12

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
133 S.Ct. 2517 (2013).........................................................................15

Appellate Case: 22-2808    Page: 7    Date Filed: 12/12/2022 Entry ID: 5226137

*Watson v. Heartland Health Labs., Inc.*,
790 F.3d 856 (8th Cir. 2015) .......................................................18, 20

*Willnerd v. First Nat. Neb., Inc.*,
558 F.3d 770 (8th Cir. 2009) ..............................................................20

**Other Authorities**

Fed. R. Civ. P. 56(a)................................................................................12

Fed. R. Civ. P. 56(c)(1)..........................................................................12

Appellate Case: 22-2808     Page: 8     Date Filed: 12/12/2022 Entry ID: 5226137

## JURISDICTIONAL STATEMENT

ADESA agrees with the contents of Plaintiff's Jurisdictional Statement.

1

## STATEMENT OF ISSUES

The District Court granted summary judgment in favor of ADESA on Plaintiff's claims of (1) retaliation and (2) disability discrimination. Accordingly, the issues properly before this Court are as follows:

1.      Whether the District Court correctly found there was no triable issue on Plaintiff's retaliation claim under the ADA, because the undisputed facts show no causal connection between the company-wide RIF and Plaintiff's alleged protected activity.

Apposite Authorities:

*E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963 (8th Cir. 2004)
*Ottman v. City of Indep., Mo.*, 341 F.3d 751 (8th Cir. 2003)
*Henderson v. Ford Motor Co.*, 403 F.3d 1026 (8th Cir. 2005)
*Beasley v. Warren Unilube, Inc.*, 933 F.3d 932 (8th Cir. 2019)

2.      Whether the District Court correctly found there was no triable issue on Plaintiff's disability discrimination claim under the ADA, because the undisputed facts show no inference of discrimination or causal connection between the company-wide RIF and Plaintiff's alleged disability.

Apposite Authorities:

*E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963 (8th Cir. 2004)
*Ottman v. City of Indep., Mo.*, 341 F.3d 751 (8th Cir. 2003)
*Henderson v. Ford Motor Co.*, 403 F.3d 1026 (8th Cir. 2005)
*Beasley v. Warren Unilube, Inc.*, 933 F.3d 932 (8th Cir. 2019)

Appellate Case: 22-2808    Page: 10    Date Filed: 12/12/2022 Entry ID: 5226137

## STATEMENT OF THE CASE

## I.     PROCEDURAL HISTORY

Plaintiff brought suit against ADESA in the United States District Court for the Western District of Missouri. *See* Joint Appendix, JA00008-25; R. Doc. 1. In his Complaint, Plaintiff alleged ADESA retaliated against him in violation of the ADA (Count I) and discriminated against him based on his disability in violation of the ADA (Count II). App. JA00019-22; R. Doc. 9, at 6-9.

After the completion of discovery and full briefing by both parties, the District Court on August 3, 2022, granted ADESA's Motion for Summary Judgment on both of Plaintiff's claims. App. JA00488-00503; R. Doc. 53, R. Doc. 54. Plaintiff timely filed a Notice of Appeal on August 25, 2022, challenging the District Court's ruling. App. JA00007.

## II.    STATEMENT OF FACTS

In connection with the briefing before the District Court, ADESA set forth the following undisputed material facts established by the record evidence before the District Court. The facts set forth below were either admitted by Plaintiff; Plaintiff claimed to dispute them but cited to nothing in the record to contradict the facts; or Plaintiff failed to provide any meaningful or relevant response whatsoever to these record facts.

3

## A. Plaintiff's Job Duties and Responsibilities.

Plaintiff was hired by ADESA in February 2018 for an Outside Sales Representative position. App. JA00034, JA00375; R. Doc. 31, at 7, R. Doc. 52, at 8. In that role, Plaintiff was primarily responsible for selling a broad range of wholesale vehicle acquisition and disposition services to new and used car dealers, developing new and existing dealer relationships in person and otherwise, resolving customer issues and complaints, driving sales initiatives and results, and other duties. App. JA00034, JA00376; R. Doc. 31, at 7, R. Doc. 52, at 9.

## B. Plaintiff's Seizure and ADESA's Accommodation of Plaintiff's Temporary Driving Restriction.

On Saturday, November 16, 2019, Plaintiff suffered a seizure. App. JA00034, JA00376; R. Doc. 31, at 7, R. Doc. 52, at 9. Plaintiff informed ADESA of his seizure over the weekend and reported to work as scheduled that following Monday, November 18, 2019. App. JA00034-35, JA00376; R. Doc. 31, at 7-8, R. Doc. 52, at 9. Plaintiff provided ADESA documentation from his health care provider stating he was temporarily unable to drive but could perform all other functions of his job. App. JA00035, JA00377; R. Doc. 31, at 8, R. Doc. 52, at 10. Plaintiff and ADESA immediately began discussing a plan going forward to accommodate the temporary driving restriction. App. JA00035, JA00377; R. Doc. 31, at 8, R. Doc. 52, at 10. ADESA accommodated Plaintiff's temporary driving restriction by modifying his

4

role so he could spend less time in the field and have another employee drive him around on field sales calls. App. JA00035, JA00377-378; R. Doc. 31, at 8, R. Doc. 52, at 10-11. Plaintiff's management team had no issues with providing him the accommodation. App. JA00035, JA00378-380; R. Doc. 31, at 8, R. Doc. 52, at 11-13.

Some time later, Plaintiff proposed an alternative accommodation that would allow his father-in-law to drive him to various work appointments. App. JA00035, JA00380; R. Doc. 31, at 8, R. Doc. 52, at 13. ADESA was unable to accommodate Plaintiff's requested accommodation because Plaintiff's father-in-law was not an employee of ADESA or any KAR Global entity, but it continued the accommodation of allowing another employee to drive Plaintiff around on sales call through the remainder of Plaintiff's employment and the period the accommodation was needed. App. JA00035, JA00380-82; R. Doc. 31, at 8, R. Doc. 52, at 13-15.

ADESA had an equal employment opportunity policy prohibiting retaliation and discrimination on the basis of disability and a policy and practice of accommodating individuals as required by law. App. JA00033-34, JA00373-375; R. Doc. 31, at 6-7, R. Doc. 52, at 6-8. Plaintiff testified he was not subjected to any discriminatory or inappropriate comments about his seizure or temporary driving restriction. App. JA00039, JA00400-401; R. Doc. 31, at 12, R. Doc. 52, at 33-34. Plaintiff also never reported any alleged discriminatory comments or conduct

Appellate Case: 22-2808    Page: 13    Date Filed: 12/12/2022 Entry ID: 5226137

pursuant to ADESA's complaint reporting policies and procedures during his employment. App. JA00039, JA00401-402; R. Doc. 31, at 12, R. Doc. 52, at 34-35.

**C. Merger of ADESA and TradeRev Sales Forces, RIF Evaluation and Analysis, and Termination of Plaintiff's Employment.**

In 2019, ADESA and another company in the KAR Global brand of companies, TradeRev, began merging their sales teams together. App. JA00035-36, JA00382-84; R. Doc. 31, at 8-9, R. Doc. 52, at 15-17. Plaintiff was aware the restructuring and merger process which had begun prior to his seizure. App. JA00036, JA00384-85; R. Doc. 31, at 9, R. Doc. 52, at 17-18. Furthermore, relevant discussions regarding the merger and staffing reassignments on which ADESA relied upon and incorporated in its ultimate RIF decisions occurred prior to Plaintiff's seizure. App. JA00498-500; R. Doc. 53, at 11-13. Specifically, each of the relevant individuals involved in the decision to include Plaintiff in the RIF – Ms. Comer, Mr. Rhoads, and Ms. Hopkins – testified that discussions about this reorganization were occurring prior to Plaintiff's seizure. App. JA00382-390; R. Doc. 52, at 15-23; App. JA00407-409; R. Doc. 52, at 40-42; App. JA00499-500; R. Doc. 53, at 12-13.

As a result of the merger, new sales territories were drawn, and staffing needs were evaluated for those new territories. App. JA00036, JA00385-86; R. Doc. 31, at 9, R. Doc. 52, at 18-19. Plaintiff worked in Market 7 of the Central Region for ADESA, and it was determined that Market had one more sales representative than

6

was needed to cover the new territories post-merger based on this analysis and evaluation. App. JA00036, JA00386-88; R. Doc. 31, at 9, R. Doc. 52, at 19-21. Once this determination was made, the evaluation criteria used for the RIF included reviewing sales representatives' job descriptions and skill sets, sales representatives' performance numbers, and overall business needs and goals. App. JA00036, JA00388-89; R. Doc. 31, at 9, R. Doc. 52, at 21-22. Skill sets were evaluated for the new roles moving forward, including the sales representatives' ability to gather new business and sellers (generally known at the time as a "hunter") and their ability to maintain and keep those customers (generally known at the time as a "farmer"). App. JA00036, JA00389; R. Doc. 31, at 9, R. Doc. 52, at 22. Ms. Comer, Mr. Rhoads, and Ms. Hopkins each testified that staffing decisions would be based on performance rankings and applicable skill sets going forward. App. JA00382-390; JA00407-409; R. Doc. 52, at 15-23, 40-42.

After the merger, the sales team consisted of the Senior Dealer Solutions Executive ("SDSE") and Dealer Solutions Executive ("DSE") positions. App. JA00036, JA00389-90; r. Doc. 31, at 9, R. Doc. 52, at 22-23. Although the SDSE position closely resembles the prior "hunter" role, and the DSE position closely resembles the prior "farmer" role, relationship building was viewed as important for both roles. App. JA00037, JA00390; R. Doc. 31, at 10, R. Doc. 52, at 23. Based on feedback from Kevin Rhoads (Plaintiff's supervisor during most of his employment

7

at ADESA), Plaintiff's skill set was viewed as more geared toward the "hunter" role; relationship building and maintenance was not seen as one of Plaintiff's strengths. App. JA00037, JA00390-91; R. Doc. 31, at 10, R. Doc. 52, at 23-24. Indeed, at least two customers previously had asked not to have Plaintiff as their sales representative going forward. App. JA00037, JA00391; R. Doc. 31, at 10, R. Doc. 52, at 24. Mr. Rhoads had also known Plaintiff from a previous employer and referred Plaintiff to ADESA. App. JA00037, JA00391; R. Doc. 31, at 10, R. Doc. 52, at 24. Mr. Rhoads informed Lindsey Comer, Director of Business Performance, before Plaintiff's interview with ADESA that Plaintiff was more of a hunter and was not necessarily the best at managing or maintaining accounts. App. JA00037, JA00392; R. Doc. 31, at 10, R. Doc. 52, at 25. It was also determined that Plaintiff was underperforming on his performance to goal for the year metrics compared to his peers. App. JA00037, JA00392-93; R. Doc. 31, at 10, R. Doc. 52, at 25-26. From Ms. Comer's perspective, Plaintiff did not always meet his performance goals during his employment at ADESA, and she had discussed these issues with Plaintiff previously. App. JA00037, JA00393-94; R. Doc. 31, at 10, R. Doc. 52, at 26-27. In addition, Ms. Comer, Mr. Rhoads, and Ms. Hopkins each testified that Plaintiff ranked the lowest amongst his peers in the performance rankings and lacked the requisite skill set for the available sales positions going forward after the reorganization, including citing concerns with his skill set and performance issues prior to his seizure. App.

8

JA00382-396; JA00407-409; R. Doc. 52, at 15-29, 40-42. Moreover, Plaintiff admitted (1) at least two customers previously had asked not to have Plaintiff as their sales representative going forward, and (2) he was underperforming on his performance to goal for the year compared to his peers. App. JA00392-393; R. Doc. 52, at 25-26. Plaintiff also did not deny that (1) he failed to meet his performance goals at other times during his employment, including prior to his seizure, (2) he was the lowest ranking performer, or (3) that he lacked the necessary skill sets identified by ADESA for the reorganized sales team going forward (i.e., that he was not proficient in the "farmer" role). App. JA00382-396; R. Doc. 52, at 15-29. Plaintiff also presented no affidavits, sworn testimony, or any objective evidence to challenge ADESA's stated reason for terminating him.

Based on business needs and evaluation of skill sets and performance, Plaintiff was ultimately included in the RIF to reduce the team to staffing levels needed in the new model, and his employment was terminated on December 17, 2019. App. JA00038, JA00394-95; R. Doc. 31, at 11, R. Doc. 52, at 27-28. During the termination meeting, Plaintiff was told his employment was ending because they did not have a hunter role for him and his sales numbers were lower than others in his position. App. JA00038, JA00395-96; R. Doc. 31, at 11, R. Doc. 52, at 28-29. There was no mention of his seizure or temporary driving restriction during the termination meeting. App. JA00038, JA00396; R. Doc. 31, at 11, R. Doc. 52, at 29.

9

In the end, more than 300 members of the ADESA and TradeRev sales teams were reviewed as part of the RIF analysis, and around 50 sales-related positions were eliminated. App. JA00038, JA00396; R. Doc. 31, at 11, R. Doc. 52, at 29. Neither Plaintiff's medical condition, nor his medical restrictions were the reason for the termination of his employment. *See* App. JA00162 at 26:15-23; *see also* App. JA00378-380; R. Doc. 52, at 11-13, App. JA00036, JA00388-389; R. Doc. 31, at 9, R. Doc. 52, at 21-22; App. JA00037-38, JA00390-396; R. Doc. 31, at 10-11, R. Doc. 52, at 23-29.

10

## SUMMARY OF THE ARGUMENT

Even giving Plaintiff every benefit of the doubt, the District Court rightly reasoned that there is no triable issue on the *prima facie* case elements of his retaliation and disability discrimination claims. Specifically, the District Court determined that Plaintiff cannot establish (1) a causal connection between Plaintiff's request for accommodation and the termination of his employment, and (2) that he has suffered an adverse employment action due to his disability.

Indeed, the District Court's decision was mandated by the undisputed facts and applicable authority. For example, Plaintiff's own testimony demonstrates that he does not dispute the reasons for which he was selected for the RIF. Specifically, Plaintiff admitted (1) at least two customers previously had asked not to have Plaintiff as their sales representative going forward, and (2) he was underperforming on his performance to goal for the year compared to his peers. App. JA00392-393; R. Doc. 52, at 25-26. Furthermore, Plaintiff did not deny that he failed to meet his performance goals at other times during his employment, including prior to his seizure. App. JA00393-394; R. Doc. 52, at 26-27. Additionally, the relevant business decisions and discussions regarding the merger and staffing reassignments on which ADESA relied upon and incorporated in its ultimate decision to include Plaintiff in the RIF occurred ***prior*** to Plaintiff's seizure. App. JA00498-500; R. Doc. 53, at 11-13. Accordingly, this Court should affirm.

11

# <u>ARGUMENT</u>

## I. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011); *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1143 (8th Cir. 2007). Once the movant demonstrates the absence of a genuine issue of fact, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing there that is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012); Fed. R. Civ. P. 56(c)(1).

On appeal from summary judgment, this Court reviews the record *de novo* to determine whether genuine issues of material fact exist, and whether the District Court erred in its application of the law. *See Buehrle v. City of O'Fallon*, 695 F.3d 807, 809 (8th Cir. 2012); *Torgerson*, 643 F.3d at 1042.

## II. THE DISTRICT COURT CORRECTLY FOUND ADESA WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS UNDER THE ADA.

In granting summary judgment for ADESA, the District Court correctly found that the undisputed facts did not give rise to any inference of discrimination or retaliation, and therefore, no causal connection existed between the decision to include Plaintiff in the RIF and Plaintiff's alleged disability, or his request for

12

accommodation. Furthermore, although the Court did not reach a conclusion on the issue of pretext, ADESA would be entitled to summary judgment because Plaintiff cannot establish that ADESA's legitimate non-retaliatory/non-discriminatory reasons for terminating his employment were merely pretext for illegal retaliation or discrimination. Finally, the arguments set forth in Plaintiff's Brief are not based in law, fact, or common sense and this Court should affirm.

### A. The District Court correctly found that the undisputed facts do not give rise to any inference of discrimination or retaliation or that Plaintiff's alleged disability or protected activity were causally connected to his termination.[1]

As outlined above, in connection with a merger of its sales forces, ADESA reviewed more than 300 members of the ADESA and TradeRev sales teams as part of the RIF analysis that ultimately eliminated 50 sales-related positions. App. JA00035-36, JA00382-384; R. Doc. 31, at 8-9, R. Doc. 52, at 15-17; App. JA00038, JA00396; R. Doc. 31, at 11, R. Doc. 52, at 29. The business decision was made that in Plaintiff's region, there were one too many sales representatives for the newly drawn territories. App. JA00036, JA00385-388; R. Doc. 31, at 9, R. Doc. 52, at 18-21. Skill sets and performance were closely and objectively evaluated, and through

---

[1]ADESA acknowledges and incorporates the District Court's serious concerns as to whether Plaintiff's request for accommodation actually constitutes "protected activity" under the ADA. *See* App. JA00497 (R. Doc. 53, p. 10) at fn. 4. To the extent this Court wishes to consider that issue, ADESA would welcome the opportunity to brief the legal question posed by the District Court further.

13

that process Plaintiff was included in the RIF because (1) Plaintiff's skill set more closely aligned with a "hunter" or "SDSE" position, and ADESA did not have an available "hunter" or "SDSE" role under the newly drawn territories and ongoing business needs in those territories, and (2) Plaintiff's purely objective sales numbers were lower than his peers in his position. App. JA00036, JA00388-389; R. Doc. 31, at 9, R. Doc. 52, at 21-22; App. JA00037-38, JA00390-395; R. Doc. 31, at 10-11, R. Doc. 52, at 23-28. Plaintiff's temporary driving restriction and seizure had nothing to do with the decision and were irrelevant to ADESA's RIF analysis. App. JA00035, JA00378-380; R. Doc. 31, at 8, R. Doc. 52, at 11-13; App. JA00036, JA00388-389; R. Doc. 31, at 9, R. Doc. 52, at 21-22; App. JA00037-38, JA00390-396; R. Doc. 31, at 10-11, R. Doc. 52, at 23-29. What is more, ADESA went out of its way to accommodate Plaintiff on a temporary basis. App. JA00035, JA00377-378; R. Doc. 31, at 8, R. Doc. 52, at 10-11. These circumstances do not give rise to any inference of discrimination, nor do they show Plaintiff's alleged disability was a determining factor in the decision to terminate his employment. *See Reach v. AlliedSignal, Inc.*, 184 F. Supp. 2d 932, 940 (W.D. Mo. 2000), *aff'd*, 13 F. App'x 445 (8th Cir. 2001) (when a plaintiff's employment is terminated in a RIF, a plaintiff must also show the protected category was a "determining" factor in their discharge).

The District Court's findings are legally and factually supported by the record. Indeed, the District Court correctly found that the business decisions and discussions

14

regarding the merger and staffing reassignments on which ADESA relied upon and incorporated in its ultimate decision to include Plaintiff in the RIF occurred ***prior*** to Plaintiff's seizure. App. JA00498-500; R. Doc. 53, at 11-13. The District Court also correctly found that the decision to include Plaintiff in the RIF was based on objective performance data and the necessary skill sets ADESA required in its newly drawn sales territories. App. JA00500-502; R. Doc. 53, at 13-15.

Furthermore, the ADA requires a "but-for" causal connection. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013)).[2] "A temporal connection can demonstrate a causal link . . . ." *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2004). Evidence of an employer's willingness to accommodate, however, negates a showing of causation. *Id.* at 970. Here, there is no "but-for" causal connection between Plaintiff's termination and his alleged protected activity or his alleged disability. Instead, ADESA promptly accommodated Plaintiff's driving restriction, and other than the mere temporal proximity of Plaintiff's requested accommodation, Plaintiff has not and cannot offer any evidence supporting that this request (or his

---

[2]Plaintiff cites *Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1739 (2020) for the premise that ADESA must show that a reasonable jury could not determine that its decision had anything to do with Plaintiff's alleged disability or request for accommodation. However, as noted in a recent Sixth Circuit decision, "the Court in *Bostock* was clear on the narrow reach of its decision and how it was limited only to Title VII itself." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021). Thus, *Bostock* has no application to this ADA case.

15

medical condition) was the "but-for" cause of his termination. App. JA00034-35, JA00376-380; R. Doc. 31, at 7-8, R. Doc. 52, at 9-13. As the District Court rightly concluded, this is simply not enough to overcome Plaintiff's burden. App. JA00501-502; R. Doc. 53, at 14-15.

**B.** **Plaintiff cannot establish that ADESA's legitimate non-retaliatory/non-discriminatory reasons for terminating Plaintiff's employment are merely pretext for illegal retaliation and discrimination.**

Even assuming Plaintiff could establish a *prima facie* case of discrimination or retaliation, ADESA is still entitled to summary judgment because it terminated Plaintiff's employment for legitimate, non-retaliatory and non-discriminatory reasons and Plaintiff cannot show those reasons were pretextual. ADESA's burden in demonstrating a legitimate non-retaliatory/non-discriminatory reason for its actions is "exceedingly light" and simply requires ADESA to proffer a non-retaliatory/non-discriminatory reason. *Avina v. Union Pacific RR Co.*, No. 4:19-00480-CV-RK, 2021 WL 2903245, at *6 (W.D. Mo. July 9, 2021) (citing *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 758 (8th Cir. 2003)). As outlined herein, ADESA selected Plaintiff as part of its company-wide RIF because (1) his skill set more closely aligned with a "hunter" or "SDSE" position and ADESA did not have an available "hunter" or "SDSE" role under the newly drawn territories and ongoing business needs in those territories, and (2) his sales numbers were lower than his peers in his position. App. JA00035-38, JA00382-396; R. Doc. 31, at 8-11, R. Doc.

16

52, at 15-29. As such, ADESA clearly had legitimate, non-retaliatory/non-discriminatory reasons for its decision to terminate Plaintiff's employment.

To satisfy his burden of establishing pretext, Plaintiff must then "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse action was false and that discrimination was the real reason." *Gilmore-Lee v. Vilsack et al.*, No. 4:20-cv-00408-DGK, 2022 WL 16838902, at *6 (W.D. Mo. Nov. 9, 2022) (citing *Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir. 2005)) ("To prove pretext, the employee must do more than show that the employment action was ill advised or unwise, but rather must show that the employer has proffered a phony excuse."). Another way of showing pretext is by presenting evidence that the employer "treated similarly-situated employees in a disparate manner." *Lake v. Yellow Transp. Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).[3]

Simply put, there is no evidence whatsoever of pretext. Plaintiff cannot claim ADESA's articulated reason for the termination of his employment is false. To the contrary, Plaintiff's own testimony demonstrates that he does not dispute the reasons for which he was selected for the RIF. Specifically, Plaintiff admitted (1) at least two customers previously had asked not to have Plaintiff as their sales representative

---

[3]As set forth above, there is no evidence that ADESA treated any similarly situated employees differently than it treated Plaintiff. In fact, ADESA eliminated some 50 sales-related positions (including Plaintiff) as part of its company-wide RIF. App. JA00038, JA00396; R. Doc. 31, at 11, R. Doc. 52, at 29.

Appellate Case: 22-2808    Page: 25    Date Filed: 12/12/2022 Entry ID: 5226137

going forward, and (2) he was underperforming on his performance to goal for the year compared to his peers. App. JA00392-393; R. Doc. 52, at 25-26. Furthermore, Plaintiff did not deny that he failed to meet his performance goals at other times during his employment, including prior to his seizure. App. JA00393-394; R. Doc. 52, at 26-27.

In sum, Plaintiff offers nothing more than his own speculation and opinions as the basis for his claims. However, Plaintiff's speculation and opinions fail to establish a disputed issue of fact with respect to pretext. *See, e.g., Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) ("In order to establish the existence of a genuine issue of material fact, '[a] plaintiff may not merely point to unsupported self-serving allegations.'") (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005); *see also Watson v. Heartland Health Labs., Inc.*, 790 F.3d 856, 864 fn. 5 (8th Cir. 2015) ("We do not consider mere speculation on summary judgment, but only facts that are supported by evidence.") (citing *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1050 (8th Cir. 2012) ("To survive a motion for summary judgment, [a plaintiff] must present more than unsupported conclusions and speculative statements, which do not raise a genuine issue of fact.")).[4]

---

[4]*See also Grey v. City of Oak Grove*, 396 F.3d 1031, 1035 (8th Cir. 2005) ("[A]ppellant's denials and justifications were not evidence that appellees fabricated the charges. The question is whether appellees' articulated reasons for discharge

18

To be clear, Plaintiff cannot point to any admissible evidence in the record to show that ADESA's legitimate non-retaliatory and non-discriminatory reason for the termination of his employment was pretextual. ADESA had an equal employment opportunity policy prohibiting retaliation and discrimination on the basis of disability and a policy and practice of accommodating individuals as required by law. App. JA00033-34, JA00373-375; R. Doc. 31, at 6-7, R. Doc. 52, at 6-8. ADESA accommodated Plaintiff's temporary driving restriction issued by his medical provider. App. JA00035, JA00377-378; R. Doc. 31, at 8, R. Doc. 52, at 10-11. Plaintiff never claimed there were any instances of mistreatment or discrimination because of his seizure or accommodation for his driving restrictions during his employment. App. JA00039, JA00400-402; R. Doc. 31, at 12, R. Doc. 52, at 33-35. Plaintiff presented no affidavits, sworn testimony, or any objective

---

were a pretext for retaliation, not whether appellant actually did what he was accused of doing or whether discharge was warranted."); *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) ("conclusory, unsupported assertions that she was treated unfairly do not raise an inference of retaliation discrimination."); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) ("A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action. Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted."); *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("A plaintiff is not allowed to . . . substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

Appellate Case: 22-2808    Page: 27    Date Filed: 12/12/2022 Entry ID: 5226137

evidence to challenge ADESA's stated reason for terminating him. Indeed, Plaintiff's arguments are based merely on his subjective belief that his seizure and/or his inability to drive played a factor in the decision to terminate his employment, which is irrelevant in a summary judgment analysis. *See Watson,* 790 F.3d at 864 fn. 5 ("We do not consider mere speculation on summary judgment, but only facts that are supported by evidence."). As such, Plaintiff only can attack ADESA's business judgment in accomplishing its RIF, which is insufficient as a matter of law to establish pretext. *See Willnerd v. First Nat. Neb., Inc.*, 558 F.3d 770, 779 (8th Cir. 2009) ("[i]n general, it is not the court's role to second-guess businesses' assessments of general economic conditions ... and their own staffing needs."); *Davidson v. Tyco/Healthcare*, 416 F. Supp. 2d 690, 705 (E.D. Mo. May 25, 2005) (plaintiff failed to show pretext where she had no evidence protected category played a role in determining her position was least valuable in department for elimination as part of a reduction in force); *Ahmed v. Am. Red Cross*, 218 F.3d 932, 933 (8th Cir. 2000) (plaintiff failed to offer proof that the evaluation resulting in her discharge as a result of a RIF was influenced by prohibited criteria).

Thus, it is clear ADESA chose Plaintiff as part of its company-wide RIF because of his performance failures, not because of his alleged disability or any alleged protected activity.

20

### C. Plaintiff's arguments to the contrary are not based in fact, law, or reality.

Plaintiff's Brief (and the entire premise of this appeal) essentially rests on two equally flawed notions: (1) it does not matter that the decision to merge the sales teams occurred prior to Plaintiff's seizure, it only matters that the decision to specifically identify Plaintiff for termination occurred after his seizure, and (2) the December 6-7 email exchange between Ms. Hopkins and Mr. Nowlin establish that the decision to terminate Plaintiff's employment was due to his medical condition and request for accommodation.

First, ADESA does not dispute that the termination of Plaintiff's employment occurred after his seizure and request for accommodation. The story does not start and end there, however. Indeed, Plaintiff strategically avoids the importance of the discussions that occurred prior to Plaintiff's seizure and that directly impacted ADESA's analysis and decisions to include nearly 50 individuals (including Plaintiff) in the RIF. These necessary details are crucial in determining whether a causal connection exists between Plaintiff's alleged disability and/or protected activity and ADESA's ultimate decision, and accordingly, whether Plaintiff can establish a *prima facie* case or show pretext. The District Court correctly analyzed these issues in its Order. Plaintiff unfortunately, does not.

When viewed in the relevant and necessary context, it is irrelevant that the decision to terminate Plaintiff's employment occurred after his seizure. What **is**

21

important in the analysis, however, is that prior to Plaintiff's seizure, the decision had been made to merge the ADESA and TradeRev sales teams, and that ADESA would be redrawing its sales territories and would necessarily involve a restructuring of the sales team. App. JA00382-390; R. Doc. 52, at 15-23; App. JA00407-409; R. Doc. 52, at 40-42. Indeed, as the District Court correctly noted, Plaintiff was aware of the reorganization of the sales teams prior to his seizure and that the reorganization would result in the overlapping of sales territories. App. JA00499; R. Doc. 53, at 12. In addition, each of the relevant individuals involved in the decision to include Plaintiff in the RIF – Ms. Comer, Mr. Rhoads, and Ms. Hopkins – testified (without impeachment or rebuttal) that discussions about this reorganization were occurring prior to Plaintiff's seizure. App. JA00382-390; R. Doc. 52, at 15-23; App. JA00407-409; R. Doc. 52, at 40-42; App. JA00499-500; R. Doc. 53, at 12-13. Each testified that staffing decisions would be based on performance rankings and applicable skill sets going forward. App. JA00382-390; R. Doc. 52, at 15-23; App. JA00407-409; R. Doc. 52, at 30-42. And notably, each testified that Plaintiff ranked the lowest amongst his peers in the performance rankings and lacked the requisite skill set for the available sales positions going forward after the reorganization, including citing concerns with his skill set and performance issues *prior to* his

22

seizure. App. JA00382-396; R. Doc. 52, at 15-29; App. JA00407-409; R. Doc. 52, at 40-42.[5]

Second, Plaintiff's subjective (and illogical) belief that the December 6-7 email correspondence between Ms. Hopkins and Mr. Nowlin somehow shows that Ms. Hopkin's decision to terminate Plaintiff's employment was based on his medical issues is, as aptly put by the District Court, "conclusory, and unsupported by the text." App. JA00500; R. Doc. 53, at 13. Plaintiff again throws context to the wind and cherry-picks certain portions of the email exchange to support these contentions. However, when read in the proper context, this email exchange actually supports ADESA's arguments, not Plaintiff's. For example, Plaintiff claims Ms. Hopkins was unaware of Plaintiff's performance deficiencies prior to this correspondence, and believes Ms. Hopkins only referenced his performance after Mr. Nowlin purportedly found issues with her request. *See* Appellant's Brief at pp. 4, 12. However, Plaintiff's contention is simply false – later in the same email chain, Ms. Hopkins notes the feedback she had already received was that Plaintiff was not the best at relationship building and that they had previously identified stronger individuals in every territory. App. JA00227-228; R. Doc. 31-12, at 2-3. Notably, when asked about this

---

[5]Moreover, Plaintiff does not dispute that he was the lowest ranking performer, or that he lacked the necessary skill sets identified by ADESA for the reorganized sales team going forward (i.e., that he was not proficient in the "farmer" role). App. JA00382-396; R. Doc. 15-29.

23

exchange, Ms. Hopkins testified Plaintiff's medical restrictions **were not** the reason for the termination of his employment. *See* App. JA00162 at 26:15-23. Plaintiff offers nothing of substance to contradict this testimony and contemporaneous documents.

Finally, Plaintiff's Brief contains a flurry of additional facts immaterial to the relevant summary judgment analysis. For example:

- Plaintiff spoke with several members of management prior to his termination about his potential role post-merger. *See e.g.,* Appellant's Brief at pp. 1-2, 4, 11.

It is self-evident that an employee's managers would discuss potential staffing changes with an employee in the face of an upcoming merger of sales teams and resulting RIF. This has no relevance to the ultimate issues in this case.

- Plaintiff was a "high performer" and would have been well suited for a new role. *See e.g.,* Appellant's Brief at pp. 1, 11.

The record clearly reflects (and Plaintiff has failed to sufficiently controvert), that Plaintiff's position was selected for elimination as part of a company-wide RIF due to his performance compared to that of his peers. App. JA00035-38, JA00382-396; R. Doc. 31, at 8-11, R. Doc. 52, at 15-29. Plaintiff admitted at least two customers previously had asked not to have Plaintiff as their sales representative going forward. App. JA00391; R. Doc. 52, at 24. He admitted he was underperforming on his performance to goal for the year on metrics compared to his peers. App. JA00392-393; R. Doc. 52, at 25-26. And he did not deny failing to meet

24

his performance goals at other times during his employment. App. JA00393-394; R. Doc. 52, at 26-27. Accordingly, Plaintiff has not established that he was performing satisfactorily or undermined in any way ADESA's legitimate business reason for including him in the RIF.

Plaintiff further admits the evaluation criteria used for the RIF included reviewing sales representatives' job descriptions and skill sets, sales representatives' performance numbers, and overall business needs and goals. App. JA00388-389; R. Doc. 52, at 22-23. And Plaintiff admits more than 300 members of the ADESA and TradeRev sales teams were reviewed as part of the RIF analysis, and around 50 sales-related positions were eliminated. App. JA00396; R. Doc. 52, at 29. The undisputed facts confirm that Plaintiff was underperforming compared to his peers and his position was eliminated based on evaluation of the RIF criteria. The law does not require ADESA to insert an additional qualification into its RIF analysis that automatically extends the employment of those individuals that are on restrictions or accommodations. ADESA had the right to conduct a RIF for business reasons and to include Plaintiff in that RIF that included hundreds of employees for the legitimate, non-retaliatory and non-discriminatory reasons it has articulated. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 939 (8th Cir. 2019).

Appellate Case: 22-2808   Page: 33   Date Filed: 12/12/2022 Entry ID: 5226137

Accordingly, the Court should ignore Plaintiff's attempts to discredit the District Court's well-reasoned findings, and should affirm.

## III. CONCLUSION

For the reasons discussed above, the District Court properly viewed the facts in the light most favorable to Plaintiff and correctly concluded there were no genuine issues of material fact warranting trial on Plaintiff's claims. Thus, the District Court's entry of summary judgment should be affirmed.

Respectfully submitted,

*/s/ Jeffrey D. Hanslick*
Jeffrey D. Hanslick, #46693
Dylan M. Long, #68217
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jhanslick@littler.com
dlong@littler.com

ATTORNEYS FOR APPELLEE

Appellate Case: 22-2808    Page: 34    Date Filed: 12/12/2022 Entry ID: 5226137

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND TYPEFACE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 5,880 words, excluding the parts of the brief excepted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 in Times New Roman font style in size 14.

## STATEMENT REGARDING VIRUS SCANNING

Pursuant to Rule 28A(h)(2) of the Eighth Circuit Rules of Appellate Procedure, the undersigned counsel for Appellee certifies that Appellee's Brief has been scanned for computer viruses and is virus free.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 9, 2022, the above and foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the Court's CM/ECF system, which sent electronic notice to all counsel of record.

*/s/ Jeffrey D. Hanslick*

27